ESTILL *v.* SAVANNAH BANK & TRUST CO., trustee.

1. Although a tenant who is a merchant may sell and dispose of a considerable portion of his stock of merchandise, including all the goods in the store of a certain class, at a reduced price and not with the intention of replacing these goods with other goods of a similar character or value, and though such a sale have the effect of decreasing the value of the stock of goods carried, it is error to charge as matter of law that this would have the effect of subjecting the tenant to immediate distraint under the provisions of section 3700 of the Civil Code, relative to tenants seeking to remove their goods from the premises.

2. Would the sale by such a tenant of his entire stock of goods in bulk have the effect of subjecting the tenant to distraint under the statute above referred to? Quære.

AUGUST 19, 1912.

Distraint. Before Judge Charlton. Chatham superior court. April 6, 1911.

*Robert L. Colding,* for plaintiff in error.

*William L. Clay,* contra, cited 24 Cyc. 1236; Masterson *v.* Bentley,. 60 Ala. 521; Leonard *v.* Brockman, 46 S. C. 128 (24 S. E. 96) ; Offterdinger *v.* Ford, 92 Va. 636 (24 S. E. 246).

BECK, J.   The plaintiff in the court below sued out a distress warrant against Estill, the defendant, on the ground that the defendant "is seeking to remove his goods from the premises." The distress warrant was levied upon a stock of goods on the leased premises. Estill filed a counter-affidavit, in which he deposed "that it is not true, as alleged in the affidavit upon which the distress warrant issued, that this defendant is seeking to remove his goods from the premises leased by him, as alleged." The trial upon the issue thus formed resulted in a verdict for the plaintiff. The defendant filed a motion for a new trial, which was overruled.

Section 3700 of the Civil Code provides that "The landlord shall have power to distrain for rent as soon as the same is due, or before due if the tenant is seeking to remove his goods from the premises." The distress warrant in the present case was issued on the ground that the tenant "is seeking to remove his goods from the premises." The tenant was a merchant, his stock of goods consisting of wallpaper, a small quantity of paints, and some sash and blinds. There was evidence to show that he had sold the sash. and blinds for about $30, and that this amount was about fifty per cent. of the regular selling price. He had also sold some paint, the quantity of which was not very definitely stated, but must have been inconsiderable, as there was not enough of any one kind to paint a house. As to the sale of the sash, blinds, and doors, the tenant himself testified on the trial, that it was his intention "not to handle that line of goods any more;  .   .   that he was going to put in a larger stock of wall-paper;" and that he had "just gotten in a new lot of wall-paper." A witness for the plaintiff, who had purchased some brushes, putty, and oil at a reduced price from one of the salesmen of the defendant, stated that the reason given for "reducing the price was that they were going out of business, or

liquidating." This reason was stated by a Mr. Kelley, or a Mr. Paxton, who were salesmen for the store.

Upon the trial, in course of his instructions to the jury the court charged them as follows: "If you find that what was done was in the usual course of business and trade as carried on in that place, the mere selling of goods to get other goods in their stead or to get rid of old stock or which was not otherwise merchantable or not in first-class condition, that would not be a removal in the eyes of the law. But if the intent was to impair the stock, to get rid of any considerable portion of it finally, without the idea of restoring it in some way or other to the business, but with the idea of disposing of it at a sacrifice in order to get out of business finally, then under such circumstances as those, if you find that was not in the usual and ordinary course of business as carried on there, that would be a removal in contemplation of law." Complaint is made of this charge. We do not consider this charge as merely submitting the proposition of law, that, if a merchant sells or is seeking to sell his stock of goods in bulk, in such a case a distress warrant might be issued against him under the provisions of the statute above quoted. But the charge is more comprehensive than that, and is liable to be understood, and was probably understood by the jury, to mean that if a merchant sells any considerable portion of his stock of goods with intent to impair the stock and without the idea of restoring it in some way to the business, and this was not done in the usual and ordinary course of business as carried on there, this would be a removal in contemplation of the law. And certainly the portion of the charge set forth above was open to the broad construction just placed upon it, under the court's additional instruction, which is also complained of in the motion for a new trial, and which is in the following language: "Take into consideration all of the circumstances as detailed to you from the stand, and reach a conclusion whether or not what was done was in the usual and ordinary course of trade and business as there conducted by the tenant, or whether it was beyond the usual and beyond the ordinary course of business, and what was done amounted to an impairment of the stock and business, with no intention of getting rid of old stock that could not be sold in the ordinary course of business and putting something back in place of it." In fact the controlling idea running through the entire

charge was, that if the sale of the goods referred to by the witnesses in their testimony was not in the usual and ordinary course of trade, but was for the purpose of getting a final disposal of these goods and without the intent of replacing them with other goods, and that this amounted to an impairment of the stock of goods in the business, the landlord had the right, under the statute, to issue the distress warrant. We do not think this doctrine is sound. While it has been held, as against a tenant of agricultural lands, that a sale of any part of the crops gives the landlord the right to sue out a distress warrant at once against a tenant who is seeking to remove his goods from the premises, we do not think that this principle can be extended to cover the case of a merchant who offers a portion of his goods for sale at reduced prices, even though such a sale is not in the usual and ordinary course of business, and will have and is intended to have the effect of reducing the amount of his stock. That a difference might exist in the application of the rule to agricultural tenants and other tenants who remove or are seeking to remove their property from rented premises was recognized in *Daniel* v. *Harris,* 84 *Ga.* 479 (10 S. E. 1013), one of the cases in which it was ruled that the removal and disposal by an agricultural tenant of a part of the crop produced on the premises would subject the tenant to immediate distraint. In the case just cited it was said: "It is contended that the mere fact that a tenant is seeking to remove his goods from the premises will not justify the suing out of a distress warrant before the rent is due, but that the removal contemplated must be fraudulent, or with some intent or purpose to deprive the landlord of his rent, or to hinder, obstruct or delay him in the collection of it. We think, however, that, in the case of agricultural tenants, what the statute has in view as to commercial crops, though it may be otherwise as to ordinary property, is the mere removal and not the purpose of it. The statute gives the landlord a special lien upon the crop (Code, § 1977). This lien attaches to the whole of the crop, and not to a part only. Without the landlord's consent, therefore, the tenant, however free from intention to defraud or injure his landlord, has no right to remove the crop or any part of it from the premises." We do not think, because a merchant, finding one line of goods, or goods kept in one department of his store, unprofitable to handle, decides to close out that line of goods and to no longer

handle it in his business, or because for any other reason he sells or offers to sell all of his goods in such line or such department, though it be a considerable portion of his stock of merchandise, and though the sale may be made without intent to replace these goods with goods of like kind or like value, that it can be declared as matter ·of law that he thereby becomes subject to immediate distraint for rent not then due. Whether such evidence might be submitted for the consideration of the jury to assist them in determining, as matter of fact, whether the merchant is seeking to remove his goods is another matter.

A different question would be presented from that which we have decided above, if it had appeared from the evidence that the defendant had sold or was offering to sell his stock of goods in bulk, and the trial judge had charged the jury distinctly that such a sale of goods by a merchant in bulk would authorize the landlord to distrain immediately.

*Judgment reversed. All the Justices concur.*